IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LOU ANNE PERKINS, INDIVIDUALLY AND AS NEXT FRIEND OF WARNER W. PERKINS AND AS BENEFICIARY OF THE ESTATE OF WARNER W. PERKINS, | § § § § § § | |
| Plaintiffs, | § § | Civil Action No. 3:10-CV-2295-D |
| VS. | § § | |
| APRIA HEALTHCARE, INC., | § § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

Defendant's motion for summary judgment presents the question whether plaintiffs' suit is barred by the two-year statute of limitations that applies to health care liability claims. Concluding that it is, the court grants the motion and dismisses this case with prejudice.

I

Plaintiffs Lou Anne Perkins ("Perkins"), individually and as next friend of Warner Perkins and as beneficiary of the Estate of Warner Perkins, sue defendant Apria Healthcare, Inc. ("Apria") to recover on claims of negligence, violations of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), fraudulent misrepresentation, and breach of express warranty in connection with the death of Warner W. Perkins ("Warner").[1] Warner

---

[1]In recounting the factual background, the court summarizes the evidence in the light most favorable to plaintiffs as the summary judgment nonmovants and draws all reasonable inferences in their favor. *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869,

suffered from multiple diseases and conditions, including interstitial lung disease, that caused him to require oxygen 24 hours per day. His treating physician prescribed oxygen treatments, and Apria was selected to provide the oxygen as well as home health care services. Warner's physician's orders were therefore sent to Apria.

In the summer of 2007, Perkins began to notice inconsistencies in the condition and performance of the supplied oxygen tanks, and, around that time, Warner's health began to deteriorate rapidly. Apria delivered oxygen tanks that were "leaking or defective" or not filled as prescribed, and Apria employees refused to reconnect tanks after refill or test to assure that they were in proper working order. This inconsistent and defective performance continued despite Perkins' complaints to Apria. Warner was admitted to the hospital on October 3, 2008 and was hospitalized when Apria made its final delivery of oxygen to his home and to his hospital room. Warner did not, however, use the oxygen from that final delivery. He died on October 16, 2008.

Perkins filed this lawsuit against Apria in Texas state court on October 7, 2010, alleging claims for negligence, DTPA violations, fraudulent misrepresentation, and breach of express warranty. Apria removed the case to this court based on diversity jurisdiction. It now moves for summary judgment based on the affirmative defense of limitations, contending, in pertinent part, that the two-year limitations period that applies to health care

---

870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

liability claims expired before Perkins filed suit.[2]

II

"Because limitations is an affirmative dense for which [Apria] will have the burden of proof at trial, to obtain summary judgment it 'must establish beyond peradventure all of the essential elements of the . . . defense.'" *Val-Com Acquisitions Trust v. CitiMortgage, Inc.*, 2011 WL 1540353, at *1 (N.D. Tex. Apr. 21, 2011) (Fitzwater, C.J.) (ellipses in original) (quoting *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.)). This means that Apria must demonstrate that there are no genuine and material fact disputes, and that it is entitled to summary judgment as a matter of law. *See, e.g., Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923–24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

---

[2]Apria also argues it is entitled to summary judgment because plaintiffs' claims are barred by express waiver and disclaimer provisions contained in the agreements between the parties. Because the court is granting summary judgment based on limitations, it need not address this ground of Apria's motion.

III

The court first considers whether the statute of limitations for health care liability claims governs all of plaintiffs' claims.

A

A health care liability claim is governed by a two-year statute of limitations. Tex. Civ. Prac. & Rem. Code Ann. § 74.251(a) (West 2011).

> "Health care liability claim" means a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13) (West Supp. 2012-13). Whether any particular claim is a health care liability claim is a question of law. *Lee v. Boothe*, 235 S.W.3d 448, 451 (Tex. App. 2007, pet. denied). The court will assume *arguendo* that Apria's conduct proximately caused Warner's death and will therefore address only the first and second elements of the statutory definition of "health care liability claim."

B

Concerning the first element, the court must decide whether Apria is a "health care provider." Texas law defines "health care provider" as "any person, partnership, professional association, corporation, facility, or institution duly licensed, certified, registered, or

chartered by the State of Texas to provide health care."[3]  Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(12)(A).  "Health care" is defined as "any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." *Id*. § 74.001(a)(10).

Apria has shown that it is licensed by the Texas Department of Health as a prescription drug manufacturer and device distributor.  Moreover, it has established that oxygen is a drug that requires a prescription, and that Apria was selected to provide it and associated home health care services to Warner according to his physician's prescription. In *San Antonio Extended Medical Care, Inc. v. Vasquez*, 327 S.W.3d 193 (Tex. App. 2010, no pet.), the court of appeals relied on very similar evidence to conclude that a company was a medical service provider because "[a]t a minimum, the delivery of the oxygen constituted an 'act' performed by [the defendant] for [the patient] during his treatment." *Id.* at 197-98 (relying on defendant's license and provision of prescription-ordered oxygen therapy via oxygen tanks); *see also Turtle Healthcare Grp., L.L.C. v. Linan*, 337 S.W.3d 865 (Tex. 2011) (assuming without discussion that supplier of home ventilator and associated services was health care provider).  Because Apria provided prescription-ordered oxygen tanks and

---

[3]The definition also includes a nonexclusive list of persons or entities who satisfy this definition.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(12)(A); *San Antonio Extended Med. Care, Inc. v. Vasquez*, 327 S.W.3d 193, 197-98 (Tex. App. 2010, no pet.) (citing Tex. Gov't Code Ann. § 311.005(13)) (other citations omitted) (noting that "including" in definition is expansive rather than limiting term).

associated health services for Warner and is licensed in Texas to do so, Apria is a health care provider.

C

The second element requires that plaintiffs' claims be "for treatment, lack of treatment, or other claimed departure from accepted standards of medical care." Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13). "A cause of action against a health care provider is a health care liability claim . . . if it is based on a claimed departure from an accepted standard of medical care, health care, or safety of the patient, whether the action sounds in tort or contract. *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 848 (Tex. 2005) (citations omitted). "A cause of action alleges a departure from accepted standards of medical care or health care if the act or omission complained of is an inseparable part of the rendition of medical services." *Id.* (citations omitted). "[A] health care liability claim cannot be recast as another cause of action to avoid [procedural] requirements," *id.* at 851, because doing so "would open the door to splicing health care liability claims into a multitude of other causes of action with standards of care, damages, and procedures contrary to the Legislature's explicit requirements." *Id.* at 854 (citations omitted).

Plaintiffs allege that Apria was negligent in that it "failed to provide operational oxygen tanks . . . that had lines that would not freeze up, thus not allowing the oxygen to flow from the oxygen tank to Warner," Pet. § VI(a); "failed to provide completely full oxygen tanks after representing that the oxygen tanks that were being delivered were in fact, full," *id.* at § VI(b); "failed to provide oxygen tanks that were not defective" due to faulty or

missing flow gauges or to leaks and/or not maintaining the correct pressure, *id.* at § VI(c) and (d); and "failed to provide the correct oxygen tanks and/or accompanying equipment necessary" for Warner's continuing survival, for his continuing survival by misrepresenting that it had delivered the correct oxygen tanks and/or accompanying equipment, and for his continuing survival by misrepresenting that certain oxygen tanks and/or equipment had been discontinued when they had not, *id.* at § VI(e), (f), and (g). Plaintiffs incorporate these negligence allegations in asserting that Apria violated the DTPA, committed fraudulent misrepresentation, and breached an express warranty. *See id.* at §§ VII, VIII, and IX. And some of the negligence allegations serve as the factual bases for plaintiffs' claims under the DTPA, *id.* at § VII (Apria "breached express warranties regarding the quality and characteristics of the oxygen tanks and accompanying equipment sold and/or leased to the Plaintiffs"); for fraudulent misrepresentation, *id.* at § VIII ("[Apria] made misrepresentations, misleading statements, and/or concealed or failed to disclose material facts to Plaintiff[s] regarding the oxygen tanks and/or accompanying equipment."); and for breach of express warranty, *id.* at § IX ("[Apria] sold or leased goods in the nature of oxygen tanks and/or accompanying equipment to Plaintiffs . . . . These goods did not comply with [Apria's] representations of the quality or characteristics of the goods."). Each of plaintiffs' claims is a health care liability claim because each is based on a claimed departure from an accepted standard of medical care or health care. This is so because the act or omission complained of is an inseparable part of the rendition of medical services, i.e., the provision of oxygen and associated home health care services to Warner under a physician's prescription.

Moreover, artfully pleading a DTPA, fraudulent misrepresentation, or breach of express warranty claim does not enable plaintiffs to circumvent the statute of limitations for health care liability claims. The Supreme Court of Texas has held that health care liability claim procedural rules apply despite a plaintiff's having alleged something nominally different than a medical malpractice claim. *See Scientific Image Ctr. Mgmt., Inc. v. Brewer*, 282 S.W.3d 233, 237 (Tex. App. 2009, pet. denied) (collecting cases).[4] Plaintiffs have simply recast as other causes of action a negligence claim that asserts a deviation from the standard of care. The summary judgment record does not contain evidence that would permit a reasonable trier of fact to find that Apria warranted or represented that it would go beyond the medical standard of care such that it could have satisfied the appropriate standard of care and yet still be held liable. *Cf. Sorokolit v. Rhodes*, 889 S.W.2d 239, 242-43 (Tex. 1994) (holding that physician's promise that plaintiff's appearance after cosmetic surgery

---

[4]*Brewer* cites

> *Rubio*, 185 S.W.3d at 845 (Tex. 2005) (patient's claim for sexual assault by another patient caused by nursing home's negligence in failing to provide adequate supervision and nursing services was health care liability claim); *Murphy v. Russell*, 167 S.W.3d 835, 839 (Tex. 2005) (claims doctor sedated patient after expressly representing and warranting he would not, could not be recast as DTPA action)[;] . . . *Earle v. Ratliff*, 998 S.W.2d 882 (Tex. 1999) (alleged representations concerning back surgeries related to treatment and surgeries performed and were not DTPA claims); *Walden v. Jeffery*, 907 S.W.2d 446, 447-48 (Tex. 1995) (dentist's failure to provide dentures that fit was a negligence claim, not DTPA claim) . . . .

*Brewer*, 282 S.W.3d at 237.

would be identical to specific photograph was actionable under DTPA).

IV

Having determined that plaintiffs' causes of action are health care liability claims that are governed by a two-year statute of limitations, the court next considers whether Apria has shown that the limitations period began before October 7, 2008, i.e., two years before plaintiffs filed this suit in state court on October 7, 2010.

A

The two-year statute of limitations for health care liability claims begins to run on the date of the breach or tort, the last date of the relevant medical or health care treatment, or the last date of the relevant hospitalization. Tex. Civ. Prac. & Rem. Code Ann. § 74.251(a). The Supreme Court of Texas has interpreted the statute, however, as not permitting a "plaintiff to simply choose the most favorable of the three dates." *Husain v. Khatib*, 964 S.W.2d 918, 919 (Tex. 1998) (citing *Bala v. Maxwell*, 909 S.W.2d 889, 891 (Tex. 1995)). "If the date of the negligence can be ascertained . . . , limitations must be measured from the date of the tort." *Id.* (citing *Kimball v. Bros.*, 741 S.W.2d 370, 372 (Tex. 1987)).

B

Apria argues that plaintiffs can point to multiple dates on which tortious conduct occurred (all of which are outside of the two-year limitations period), and therefore are not entitled to invoke the course of treatment clause. Alternatively, it maintains that the course of treatment did not extend past October 3, 2008, when Warner was admitted to the hospital. Apria reasons that although it made a final oxygen delivery on October 10, 2008, Warner did

not use that oxygen. Plaintiffs do not dispute that there are ascertainable dates on which breaches or torts occurred; they only argue that, if the limitations period is calculated based on the course of treatment, the final delivery extends the course of treatment until October 10, 2008 and thus makes their lawsuit filed on October 7, 2010 timely.

The court holds that a reasonable trier of fact could only find that the limitations period began to run on the final day that plaintiffs allege that Apria provided defective service, i.e., the final day on which a breach or tort occurred. Running the limitations period from the end of a course of treatment is appropriate when the plaintiff is not in a good position to know when the injury occurred. *See Husain*, 964 S.W.2d at 919 ("The purpose of the provisions for measuring limitations from the last date of treatment or hospitalization is to aid a plaintiff who was injured during a period of hospitalization or a course of medical treatment but has difficulty ascertaining the precise date of the injury." (citing *Kimball*, 741 S.W.2d at 372)). But plaintiffs are able to identify dates on which breaches or torts occurred. Accordingly, because a reasonable trier of fact could only find that there are ascertainable dates on which a breach or tort occurred, the final day of treatment does not control the date the limitations period commenced.

Moreover, plaintiffs have not adduced any evidence that would enable a reasonable trier of fact to find that Apria breached the standard of care in connection with its final oxygen delivery on October 10, 2008, because Warren did not use that oxygen and because the summary judgment evidence would not enable a reasonable trier of fact to determine the condition of the final delivery. *See Earle v. Ratliff*, 998 S.W.2d 882, 886-87 (Tex. 1999)

(declining to apply course of treatment rule to plaintiff who had been harmed by negligent surgery and treated by same doctor following surgery because plaintiff did not present any evidence of negligence in the post-surgery treatment). Because the final delivery is the only act that Apria committed within the two-year limitations period and is insufficient of itself to constitute a breach or tort, a reasonable trier of fact could only find that plaintiffs' claims are based on conduct that preceded the two-year limitations period and are therefore time-barred.

\* \* \*

The court concludes for the reasons explained that Apria has established that plaintiffs' claims are health care liability claims that are barred by limitations. Apria's motion for summary judgment is granted, and this suit is dismissed with prejudice by judgment filed today.

**SO ORDERED.**

October 17, 2012.

SIDNEY A. FITZWATER
CHIEF JUDGE